# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH BEHRINGER,<br><br>               Plaintiff,<br><br>     v.<br><br>CALIFORNIA POLYTECHNIC STATE UNIVERSITY, SAN LUIS OBISPO, et al.,<br><br>               Defendants. | Case No. 5:23-cv-00934-JFW (SK)<br><br>**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS** |

## I.

Plaintiff Elijah Behringer is a former student at California Polytechnic State University (Cal Poly) in San Luis Obispo County who studied electrical engineering there from 2019 to 2021. (First Amended Complaint (FAC), ECF 16, at 10-11).[1] For those two years of completed studies, he paid a little more than $41,000 in tuition to Cal Poly. (FAC at 11). After skipping the fall 2021 semester, plaintiff decided to reenroll for spring 2022. (*Id.* at 10). Around that time, though, California (like the rest of the country) was still under a state of emergency due to the Covid-19 pandemic. (*Id.* at 6). So, around August 2021, the County issued public health orders, enforceable by fine or imprisonment, mandating indoor use of masks and requiring proof of Covid-19 vaccination or negative results from Covid-19 testing to occupy public places including schools within the County. (*Id.* at 7-8). About two

---

[1] The nonconclusory and material factual allegations in the FAC are taken as true and construed in the light most favorable to plaintiff. *See Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019).

months later, Cal Poly's president issued his own university health directive likewise mandating use of masks in classrooms and conditioning attendance on proof of vaccination or negative test results. (*Id.* at 9-10).

Students seeking an exemption from the university's Covid-19 policy could apply for it at the campus Disability Resource Center. (*Id.* at 9). Plaintiff, however, had no bona fide health need or sincere religious reason for an exemption. He merely objected to the compulsory nature of these public health measures and so "refused to be injected with a COVID-19 vaccine, wear a mask over his face, or submit to COVID-19 testing." (*Id.* at 10). Based on those personal objections, plaintiff "requested an exemption to allow him to go to class" free of any Covid-19 precautions. (*Id.*). Cal Poly administrators denied that exemption. (*Id.*). Because he otherwise "refused" to comply with the university policy, plaintiff was unable to enroll for spring 2022 classes. (*Id.* at 6, 10). He has been on "leave of absence" since and not returned to complete his electrical engineering degree even though the challenged Covid-19 orders have been lifted.[2] (*Id.* at 10).

Instead, in May 2023, plaintiff filed suit here naming Cal Poly, its president, three Cal Poly administrators, the County, and the County's health officer as defendants. (*Id.* at 1, 18-36). In his operative complaint, he asserts five "federal counts" mostly under 42 U.S.C. § 1983. (*Id.* at 18-25). Plaintiff seeks only monetary damages, no injunctive relief. He acknowledges that none of the challenged Covid-19 orders remains in effect. But plaintiff paid no tuition (or at least none that the university is refusing to refund) for the spring 2022 classes that he could not attend while refusing to

---

[2] *See* Cnty of San Luis Obispo Health Agency, *SLO County's Indoor Mask Order Will Be Lifted on Feb. 16, in Alignment with State*, https://perma.cc/84KS-SD4R; Cal Poly, *Coronavirus Archived Updates*, https://perma.cc/PC9F-PP8H. As of January 2023, Cal Poly has not required Covid-19 testing, vaccination, or masking. *See* Cal Poly, *Coronavirus Campus Updates*, https://perma.cc/S23U-6YD2.

comply with the university's Covid-19 policy. So, as compensatory damages, plaintiff seeks only a retroactive refund of the $41,433.19 in tuition he paid for semesters completed by 2021—before he was denied an exemption in 2022. (*Id.* at 35-36). He wants those damages then trebled as an alleged "terrorism" victim under 18 U.S.C. § 2333. (*Id.* at 36). And he demands any statutory or punitive damages available under state law. (*Id.*).

On top of damages, plaintiff demands that state and federal grand juries be convened to investigate defendants for alleged criminal activities. (*Id.* at 35-36). Plaintiff claims that the County, as part of the executive branch of government, had no authority to issue its public health orders because the California state legislature had not passed any voter-approved laws delegating such authority to the County in response to the Covid-19 pandemic. (*Id.* at 11-14). He adds that both the County and Cal Poly—by mandating indoor mask use and requiring either vaccination or testing—unlawfully compelled residents and students to wear medical devices or undergo experimental medical treatment and testing without their "informed consent." (*Id.* at 14-17). As a result, plaintiff alleges many "state counts" in the FAC based on these claimed illegitimacies in defendants' now-expired Covid-19 orders. (*Id.* at 25-34). One of those counts is for extortion under California Penal Code § 518. (*Id.* at 25). And citing that alleged extortion as "racketeering activity" under the federal criminal RICO statute, plaintiff includes among his federal claims a civil RICO cause of action under 18 U.S.C. § 1964(c). (*Id.* at 20-23).

Defendants now move to dismiss the FAC for many reasons, including for failure to state a claim on which relief may be granted and based on Eleventh Amendment or qualified immunity grounds. (ECF 17, 20, 28, 30). As detailed below, plaintiff lacks standing in federal court to challenge the overall lawfulness or legitimacy of the County's and Cal Poly's now-defunct

Covid-19 orders. Even if he retains standing to challenge Cal Poly's refusal to excuse him from the university's Covid-19 policy, he fails to state a procedural due process or civil RICO claim on which relief may be granted. Likewise, plaintiff has no private right of action to sue defendants under the anti-terrorism and other criminal or civil rights statutes cited for his remaining federal claims. And with no actionable federal claim left, the state-law claims do not belong in federal court. It is therefore recommended that defendants' motions be granted. *See* 28 U.S.C. § 636(c); G.O. 05-07.

## II.

To begin, plaintiff lacks standing to sue in federal court to the extent he maintains that defendants violated federal or state law when they enacted their Covid-19 health orders in fall 2021. Article III of the U.S. Constitution vests the federal judiciary "with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Article III standing is a controlling element in the definition of a case or controversy." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). So indispensable is such standing to the court's subject matter jurisdiction that it may be evaluated sua sponte at any time. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). To satisfy standing, plaintiff must establish (1) that he has suffered an "injury in fact," which is both "concrete and particularized" and "actual or imminent"; (2) that there is a "causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable" to defendants' challenged action; and (3) that it is likely the claimed injury can be "redressed" through a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

At the very least, plaintiff cannot meet the "concrete and particularized" injury condition of standing when he challenges defendants' Covid-19 orders on the ground that they were unlawfully enacted from the start. (FAC at 11). An injury is particularized for Article III standing only if it "affect[s] the plaintiff in a personal and individual way" rather than just generally as a member of the "public at large." *Lujan*, 504 U.S. at 560 n.1, 574. Yet insofar as plaintiff questions the authority of the County to enact its public health orders as well as defendants' power to mandate Covid-19 precautions like masking, vaccination, and testing, he was no more *particularly* harmed by those purportedly ultra vires actions than any other county resident or university student. *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). A "plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws"—lacks Article III standing. *Lujan*, 504 U.S. at 573–74. Plaintiff's only particularized injury, in other words, stems from Cal Poly's decision (allegedly at the County's behest) denying him an unconditional exemption from the university's Covid-19 policy so that he could enroll in classes beginning in 2022.

With his jurisdictional standing properly framed, plaintiff must prove that each of his federal claims has "a cognizable legal theory" and "sufficient factual allegations to support a cognizable legal theory." *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019). In doing so, however, he cannot bootstrap his challenge to the intrinsic legitimacy of defendants' Covid-19 orders into claims ostensibly aimed at remedying his particularized injury as a prospective university student denied enrollment free of Covid-19 restrictions. In other words, plaintiff must show that the allegations in his five "federal counts" can each state a cognizable claim under federal law—

without shoehorning the professed illegalities of defendants' public health orders that he lacks standing to attack in federal court. But plaintiff has not met—and cannot meet—his pleading burdens on these required terms.

In his first federal count, plaintiff alleges that defendants denied him "procedural due process under the Fourteenth Amendment of the U.S. Constitution." (FAC at 18). To state such a claim, plaintiff must allege facts showing "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003). But neither the liberty nor property component of the federal Due Process Clause could have conferred on plaintiff a right to attendance at a public state university—exempted from campuswide health measures—during the Covid-19 pandemic. And his wish for a desired procedure—a "formal hearing where he could voice his complaints" (FAC at 19)—could not itself have been "the basis for a liberty or property interest" protected by the Fourteenth Amendment. *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). In short, because he has not alleged—and cannot allege—any protected liberty or property interest in university attendance with no Covid-19 restrictions, plaintiff fails the basic "threshold requirement" to state a cognizable due process claim. *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007).

For starters, contrary to the essential premise of his claim, plaintiff has no fundamental right to a university education under either the U.S. Constitution or even state law. *See Plyler v. Doe*, 457 U.S. 202, 223 (1982); *Gurfinkel v. L.A. Cmty. Coll. Dist.*, 121 Cal. App. 3d 1, 6–7 (1981). Nor would he have had any constitutionally protected right to refuse vaccinations—even if vaccinations had been mandated with no substitute testing option (which wasn't the case here, of course). *See Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905); *Burcham v. City of L.A.*, 562 F.

Supp. 3d 694, 706 (C.D. Cal. 2022); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or. 2021). And neither masking indoors nor testing before entering a public space are "constitutionally problematic" requirements. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); see *Guilfoyle v. Beutner*, 2021 WL 4594780, at *16–17 (C.D. Cal. Sept. 14, 2021) (no fundamental right to not wear masks or not be screened); *Health Freedom Def. Fund, Inc. v. City of Hailey*, 590 F. Supp. 3d 1253, 1266 (D. Idaho 2022) ("[M]ask-mandates are not a form of medical treatment that triggers a fundamental liberty interest"). Plaintiff thus cannot state a due process claim based on any constitutionally protected liberty interest.

      Similarly, plaintiff had no guaranteed property interest in continued enrollment at Cal Poly exempt from public health measures. A protected property interest can only exist when there is a "legitimate claim of entitlement . . . defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). In other words, the "property interest determination" turns on "whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022). A protected property interest cannot just spring from "merely an abstract need or desire for the particular benefit." *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017).

      Plaintiff points to no independent legal source that gave him a legitimate claim to university attendance with no conditions he disliked. Nor could he. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales,*

545 U.S. 748, 756 (2005); *see Doyle v. City of Medford*, 606 F.3d 667, 672–73 (9th Cir. 2010). That means the claimed source of a legally protected property interest must contain "(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012). Plaintiff can identify no such source, whether under state law or otherwise, nor is the court aware of any. Even the one state regulation he cites is self-defeating because it provides that "suspension" from classes "may be justified if a student violates a university presidential order." (FAC at 19). At most, then, plaintiff's allegations reveal only his "unilateral expectation" of continued attendance at the university free of any Covid-19 measures that he personally objected to. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 428 (9th Cir. 1990). Such "subjective expectancy creates no constitutionally protected interest." *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984).

     Plaintiff does not seriously contest these longstanding principles negating his due process claim. Instead, he rests his claim on the misplaced premise that "any emergency public health order was null under law and could be ignored with legal impunity." (FAC at 19). He argues that defendants, when enacting their Covid-19 orders, either violated notions of separation-of-powers in government or breached norms of informed patient consent. But not only does plaintiff lack standing to challenge defendants' public health orders on those grounds (as already explained), there is no "general liberty interest in being free from capricious government action" under the Fourteenth Amendment. *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 976 n.5 (9th Cir. 2002). Nor is there any constitutionally protected property interest in being free of illegal decisions by public officials. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Lone Star Sec. &*

*Video, Inc. v. City of L.A.*, 584 F.3d 1232, 1236 (9th Cir. 2009). No matter how strongly plaintiff believes that defendants' Covid-19 orders were inherently unlawful or politically illegitimate, those objections alone are not enough to create Article III standing and cannot be smuggled into federal court through an otherwise empty procedural due process claim. The "due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848.

In his second federal count, plaintiff claims that defendants violated the federal criminal RICO statute under 18 U.S.C. § 1962(c). (FAC at 20). To state a civil RICO claim, plaintiff must plead facts plausibly showing (among other elements) that defendants engaged in a pattern of criminal "racketeering activity"—known as "predicate acts"—causing injury to his business or property. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see* 18 U.S.C. § 1961 (enumerating predicate acts that qualify as racketeering activity). According to plaintiff, defendants' qualifying predicate act was the crime of "mass extortion." (FAC at 21). But as plaintiff correctly alleges elsewhere, extortion requires the actual "obtaining" of property from the victim by the wrongful use of force or fear. (*Id.* at 25). "Obtaining property requires not only the deprivation but also the acquisition of property. That is, it requires that the victim 'part with' his property, and that the extortionist 'gain possession' of it." *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (cleaned up). Neither of those things happened here—nor could they have—even by plaintiff's account of events.[3]

---

[3] It makes no difference whether an extortion predicate act is alleged under federal or state law. "[E]ven if the conduct in question is a crime punishable by more than one year in prison under state law, it cannot serve as a RICO extortion predicate unless it satisfies the generic *federal* definition of extortion." *Abcarian v. Levine*, 972 F.3d 1019, 1029 (9th Cir. 2020). And extortion is generically defined as "obtaining something of value

After all, plaintiff has never been out-of-pocket for any tuition or costs for the spring 2022 classes he was not allowed to enroll in. That is why his claim for actual damages is limited to a retroactive tuition refund for classes taken in 2021 and before. Contrary to what plaintiff may be assuming, the $41,000 in tuition that he paid cannot have been the extorted thing of value since Cal Poly received that *before* the challenged Covid-19 orders were even announced (never mind, of course, that the County wouldn't have received those tuition monies anyway). And even if plaintiff is alleging that the unrefunded tuition is the injury to his "business or property" under the criminal RICO statute, that is still a separate element needed to make out a RICO claim. It does not by itself meet the "obtaining property" element needed to prove the criminal predicate act of extortion. *See Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1271 (9th Cir. 2023) (The "civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was by reason of the RICO violation, which requires the plaintiff to establish proximate causation.") (cleaned up); *see also Pierce v. Citibank (S.D.), N.A.*, 92 F.3d 1193, 1193 (9th Cir. 1996) (mem.) (recognizing that "injury requirement of RICO" and "property which can be subject to extortion" are distinct elements). Thus, no defendant could have committed extortion when mandating Covid-19 precautions—even under plaintiff's theory of the crime—since no one ever "obtained" anything of value from plaintiff to consummate the alleged crime. *See, e.g., Block v. Snohomish Cnty.*, 733 F. App'x 884, 888–89 (9th Cir. 2018).

Nor did plaintiff ever surrender any property of value because of defendants' allegedly extortionate Covid-19 orders. What defendants

---

from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003).

wanted—and what plaintiff ultimately refused to give them—was his compliance with their masking and vaccination or testing mandates. But merely being forced to do something against one's will, whatever other law that might violate, is not an extortionately induced transfer of property. "To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003). That cannot be enough since the "property extorted must [] be *transferable*—that is, capable of passing from one person to another." *Sekhar*, 570 U.S. at 734. Otherwise, "extortion, stripped of an obtaining requirement, really amounts to the lesser crime of coercion, *i.e.,* 'the use of force or threat of force to restrict another's freedom of action.'" *United States v. McFall*, 558 F.3d 951, 956 n.6 (9th Cir. 2009) (quoting *Scheidler,* 537 U.S. at 405). Yet that is the most that plaintiff can ever establish here: that defendants sought his unwilling compliance with Covid-19 precautions under threat of "fine and imprisonment" in the County's case or expulsion from campus by "police force" in Cal Poly's case. (FAC at 21). Because that would undeniably "blur" the "extortion/coercion distinction" in criminal RICO law, *McFall,* 558 F.3d at 956 n.6, plaintiff cannot rest his civil RICO claim on any alleged predicate act of extortion.[4]

In his third federal count, plaintiff alleges that defendants engaged in domestic terrorism under Section 802 of the USA Patriot Act, Pub. L. No. 107-56, now codified at 18 U.S.C. § 2331. But unless authorized elsewhere by Congress, a federal "statute must either explicitly create a right of action

---

[4] None of the other assorted state statutes referenced in the FAC would qualify as a predicate act either, since they are neither listed in the RICO statute nor punishable by imprisonment for more than a year. *See* 18 U.S.C. § 1961(1); *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1178 (E.D. Cal. 2017).

or implicitly contain one." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008). Section 2331 does neither. *See Davis v. FBI*, 2018 WL 1185239, at *2 (S.D. Cal. Mar. 7, 2018); *Karkour v. United States*, 2010 WL 11595795, at *3 (C.D. Cal. Mar. 10, 2010). It merely defines "domestic terrorism" and other terms used in the federal anti-terrorism statutes that are criminally enforceable by federal prosecutors. Nothing in § 2331 reveals any legislative intent to create a private cause of action for "domestic terrorism" against public officials because of their Covid-19 policies.[5] And "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abcarian v. Levine*, 972 F.3d 1019, 1025-26 (9th Cir. 2020) (cleaned up). Thus, even if plaintiff believes he was a victim of public health restrictions amounting to "domestic terrorism," § 2331 supplies no private civil remedy against counties, universities, and their employees to vindicate that belief. *See, e.g.*, *Baber v. Newsom*, 2020 WL 5875018, at *3–5 (C.D. Cal. July 15, 2020); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action.").

In his fourth and fifth federal counts, respectively, plaintiff alleges that defendants violated 18 U.S.C. § 241 and § 242. (FAC at 24-25). But those, too, "are criminal statutes that do not give rise to civil liability." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980)). "[I]f being a victim of the offense described in a criminal statute were sufficient to assert an implied cause of action, then the victim of *any* crime would be an especial

---

[5] By contrast, 18 U.S.C. § 2333(a) permits United States nationals to sue for injuries suffered because "of an act of international terrorism." But while plaintiff demands treble damages under § 2333, he does not allege—nor could he even by his own account—that he was somehow injured by "international terrorism."

beneficiary of the criminal statute's proscription who could then assert a civil claim." *Abcarian*, 972 F.3d at 1026 (cleaned up). "There would be no logical stopping point to this line of reasoning." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190–91 (1994). Adding a superfluous citation to § 1983, as plaintiff does with his fourth count, cannot help since that statute "is not itself a source of substantive rights." *Graham v. Connor,* 490 U.S. 386, 393–94 (1989) (cleaned up). And neither § 241 nor § 242 confers federal rights civilly enforceable through a § 1983 suit. *See Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir. 1956), *overruled on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). "As a private citizen, [p]laintiff does not have standing to bring suit under the[se] criminal statutes." *Huntsberry v. Shields*, 2016 WL 8679237, at *2 (N.D. Cal. June 24, 2016); *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Finally, in his fifth count, plaintiff alleges that defendants engaged in a conspiracy under 42 U.S.C. § 1985(3) or failed to prevent such conspiracy under § 1986. But to state a claim under § 1985(3), plaintiff must allege that he was denied equal protection because of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffith v. Breckenridge,* 403 U.S. 88, 102 (1971). Claiming to be in a group (still) opposed to (now-defunct) Covid-19 public health measures cannot meet that element. After all, the term "class" in § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in [certain] conduct." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993). The reach of § 1985(3) can extend "beyond race only when the class in question can show that there has been a governmental determination that its members require

and warrant special federal assistance in protecting their civil rights." *Orin v. Barclay*, 272 F.3d 1207, 1217 n.4 (9th Cir. 2001) (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)).  Unless so circumscribed, § 1985(3) would be transformed into "a general federal tort law." *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518–19 (9th Cir. 1987).  Thus, to state a class-based (rather than race-based) claim under § 1985(3), the "class in question" must share "a suspect or quasi-suspect classification requiring more exacting scrutiny" or be a group "that Congress has indicated through legislation . . . require[s] special protection." *Sever*, 978 F.2d at 1536 (cleaned up).  But being among citizens still rankled by past Covid-19 measures, as plaintiff alleges (FAC at 34-35), neither implicates even a quasi-suspect classification nor qualifies as membership in a congressionally protected group.  And since he has no basis to sue under § 1985(3), plaintiff cannot state a derivative claim under § 1986, either.  *See Trerice v. Pederson*, 769 F.2d 1398, 1403 (9th Cir. 1985) ("[A] cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.").

## III.

For all these reasons, defendants' motions to dismiss the FAC should be granted.  Plaintiff's federal claims may be dismissed for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6), 12(h)(3).  Leave to amend those dismissed claims should be denied as futile because no amendment can cure their fatal legal deficiencies.[6]  *See Ctr. for Biological Diversity v. U.S. Forest*

---

[6] The pleading defects discussed above are only some of the incurable deficiencies in plaintiff's federal claims.  For instance, Cal Poly and its employees sued in their official capacities are arms or agents of the State of California and thus enjoy absolute Eleventh Amendment immunity from damages suits in federal court.  *See Pennhurst State Sch. &*

*Serv.*, --- F.4th ---, 2023 WL 5660071, at *9 (9th Cir. Sept. 1, 2023). And with the federal claims dismissed at this early pleading stage, there would be no good reason to exercise supplemental jurisdiction over plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). It is therefore recommended that judgment be entered dismissing the federal claims in the FAC with prejudice and the state-law claims without prejudice.[7]

DATED: September 15, 2023

STEVE KIM
United States Magistrate Judge

---

*Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *see also Miller v. Bd. of Trs. of Cal. State Univ.*, 2021 WL 358376, at *3 (C.D. Cal. Jan. 13, 2021) ("[A] CSU campus is an arm of the state for purposes of the Eleventh Amendment."); *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1232 (E.D. Cal. 2009) (Eleventh Amendment immunity bars civil RICO claim against state agency and state officer sued in official capacity). Similarly, municipalities and municipal employees sued in their official capacities cannot be subject to civil liability under RICO. *See Abcarian*, 972 F.3d at 1027; *Morton v. Frost*, 2020 WL 13328484, at *3 (C.D. Cal. Jan. 13, 2020). And in their personal capacities, the Cal Poly and County employees enjoy qualified immunity for any § 1983 claims because the facts alleged, even when taken as true, fail "to support the claim that the officials' conduct violated clearly established constitutional rights." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). "The very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions." *Zieper v. Metzinger,* 474 F.3d 60, 71 (2d Cir. 2007) (citing *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). "This is especially true when officials are forced to act quickly, such as in the context of a public health emergency." *DiBlasio v. Novello*, 413 F. App'x 352, 356 (2d Cir. 2011) (cleaned up). And that is why "courts across the country have repeatedly held government officials to be immune from suit in their personal capacities" when sued for "COVID-19 mitigation measures." *Bellatoni v. Lamont*, 2023 WL 3125669, at *4 (D. Conn. Apr. 26, 2023).

[7] Such recommended dismissal is not intended to suggest that there is merit to plaintiff's state-law claims. *See, e.g., Ruiz v. Gonzalez*, 2023 WL 2088364, at *2 (E.D. Cal. Feb. 17, 2023) ("There is no private right of action under the California Penal Code."). Nor is it intended to imply that they are free of procedural infirmities. *See, e.g.*, Cal. Gov't Code §§ 911.2, 915(a).